## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SHAKA U. DYETTE,
            Plaintiff,

v.                                          CIVIL ACTION NO. 16-10202-NMG

LT. WILLIAM J. SHUGRUE, ET AL.,
            Defendants.

## MEMORANDUM AND ORDER

**GORTON, J.**

I.    **Introduction**

On February 1, 2016, plaintiff Shaka U. Dyette ("Dyette") a prisoner in custody at the Souza Baranowski Correctional Center ("SBCC") and formerly in custody at MCI Cedar Junction, filed a self-prepared civil rights Complaint, with exhibits, against four employees of the Massachusetts Department of Correction ("DOC") working at MCI Cedar Junction. These defendants include: 1) Lt. William J. Shugrue ("Lt. Shugrue"); 2) DOC Investigator Scott W. Black ("Investigator Black") ; 3) Disciplinary Officer Kurt S. DeMoura ("D.O. DeMoura"); and 4) Superintendent James S. Saba ("Superintendent Saba"). Dyette seeks injunctive relief and monetary damages stemming from the alleged unauthorized use of force by Lt. Shugrue.

Specifically, Dyette contends that on June 11, 2014, as he was exiting the chow hall, he was ordered by Correctional Officer Hope Hill to comply with a pat search. He walked over to the her with his hands up for the pat search, but then was told to back up closer to her. Dyette questioned the order to back up. Then, Lt. Shugrue approached the scene and told Dyette to back up, but when Dyette stated there was no more space for him to do so, Lt. Shugrue ordered him to go to a room for a strip search. Dyette asked Lt. Shugrue the reason for a strip search, but was told only to keep moving. As Dyette was in the process of turning around to walk toward the room to be strip searched, Lt. Shugrue punched him in the face. Thereafter, Dyette was restrained by several correctional officers. Dyette claims he addressed this incident with Superintendent Saba in a grievance.

After this incident, Dyette was placed in solitary confinement for 30 days.  He alleges that he was subjected to unsanitary conditions, including unclean water, as well as the lack of ventilation and sufficient heat.  As a result, he suffered from blood pressure issues and contracted an infectious heat rash on his right foot.

Next, Dyette claims that he was blackmailed by Investigator Black, who told him to withdraw his grievance if he did not want to be placed in a maximum security facility.  He also claims Investigator Black retaliated against him by filing a false disciplinary report because he did not withdraw his grievance.  Additionally, Dyette claims that he was denied videotape evidence that he needed for his grievance and for the disciplinary process.

Accompanying the Complaint, Dyette filed a Motion to Appoint Counsel (Docket No. 2) and a Motion for Leave to Proceed *in forma pauperis* (Docket No. 3).

On February 18, 2016, Dyette filed a Letter (Docket No. 5 ) requesting help obtaining appointed counsel from the Court's *pro bono* project.

## II.   Discussion

### A.   The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Dyette's financial affidavit and prison account statement, this Court finds that he lacks funds to pay the $400.00 filing and administrative fees for this action. Nevertheless, because he is a prisoner, he is obligated to pay the filing fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Dyette's Motion for Leave to Proceed *in forma pauperis* (Docket No. 3 ) is ALLOWED, and he is Ordered to pay the filing fee as follows.

1.     Dyette is assessed an initial partial filing fee of $18.33, pursuant to 28 U.S.C. § 1915(b)(1)(A);[1] and

---

[1] The initial partial assessment represents 20% of the average monthly deposits for a six-month period as reflected in his prison account statement from the period June 1, 2015 to

      2.     The remainder of the fee <u>$331.67</u> is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

The Clerk shall send a copy of this Memorandum and Order to the SBCC Treasurer's Office.

      B.    <u>Screening of the Complaint</u>

Because Dyette is a prisoner, the screening provisions of the PLRA come into play.  The PLRA contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  <u>See</u> 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, <u>Neitzke</u> v. <u>Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In connection with this preliminary screening, Dyette's *pro se* Complaint is construed generously.  <u>Hughes</u> v. <u>Rowe</u>, 449 U.S. 5, 9 (1980);  <u>Haines</u> v. <u>Kerner</u>, 404 U.S. 519, 520 (1972);  <u>Instituto de Educacion Universal Corp.</u> v. <u>U.S. Dept. of Education</u>, 209 F.3d 18, 23 (1st

---

December 10, 2015.  This calculation was manually prepared based on the prison account statement submitted and is made without prejudice to Dyette seeking reconsideration based on certified account information in accordance with the formula set forth in 28 U.S.C. § 1915(b). Further, the initial partial assessment is made regardless of whether or not Dyette currently has sufficient funds in his prison account to pay.  The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist."  28 U.S.C. § 1915(b)(1).

Cir. 2000).

Under a broad reading, this Court considers Dyette to have stated plausible claims against defendants Lt. Shagrue and Investigator Black; however, the Complaint is substantially deficient with respect to the remaining two defendants, D.O. DeMoura and Superintendent Saba for the reasons set forth below.

      C.     <u>Claims Against Superintendent Saba</u>

           1.  <u>Monetary Damages are Not Recoverable For Official Capacity Claims</u>

Claims for monetary damages against Superintendent Saba (or any of the defendants) based on their "official capacities" are barred by Eleventh Amendment sovereign immunity.  The Eleventh Amendment bars suits against an unconsenting state brought by its own citizens as well as by citizens of another state.  <u>Pennhurst State Sch. & Hosp.</u> v. <u>Halderman</u>, 465 U.S. 89, 100 (1984).  The Eleventh Amendment also extends to confer immunity from suit upon state officials when "the State is the real substantial party in interest, "that is, when 'the judgment sought would expend itself on the public treasury . . . , or interfere with the public administration . . . . " <u>Id.</u> at 101-102, n. 11;  <u>accord</u> <u>Hafer</u> v. <u>Melo</u>, 502 U.S. 21, 25 (1991) (same).  Therefore, Dyette may not obtain monetary relief pursuant to § 1983 from any of the defendants in their "official" capacities.  <u>See</u> <u>Will</u> v. <u>Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office).

In light of this, Dyette's claims for monetary relief against the defendants in their official capacities are subject to dismissal pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii)

           2.  <u>Failure to State a Plausible Clam for Relief Under Section 1983; Lack of</u> <u>*Respondeat Superior* Liability; Lack of a Plausible Failure to Intervene Claim</u>

Next, Dyette fails to state any actions or inactions by Superintendent Saba that would state a plausible claim upon which relief may be granted, as required by Rule 8 of the Federal Rules of Civil Procedure.  The only reference in the Complaint to this defendant is that after the alleged assault by Lt. Shagrue, Dyette filed a grievance to Superintendent Saba apparently for

"failing to oversee the person who committed the assault."  Compl. (Docket No. 1 at ¶ 12).

To the extent that Dyette seeks to hold Superintendent Saba liable for the alleged wrongful actions of his subordinates, such as Lt. Shagrue, he fails to state a claim under 42 U.S.C. § 1983 because there is no *respondeat superior* liability under § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under Section 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).   In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization."  Id. at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

Here, Dyette has not set forth any underlying facts from which direct liability of Superintendent Saba could be inferred.  His ambiguous claim concerning "failure to oversee" appears to relate to the *respondeat superior* theory that Superintendent Saba is liable for the actions of his employees; however, to the extent that Dyette intends to assert a claim for failure of Superintendent Saba to intervene, he also has not set forth sufficient underlying facts to state a plausible claim for relief.  Section 1983 claims based on the failure to intervene turn on whether the defendant's actions were reckless or callously indifferent to the plaintiff's civil rights.  The United States Court of Appeals for the First Circuit has stated that " . . .  a supervisor cannot be held liable for merely negligent acts.  Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others."  Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) (citing Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) and Bordanaro v. McLeod, 871 F.2d 1151, 1163 (1st Cir. 1989),

cert. denied 493 U.S. 820 (1989)).

The test for determining what constitutes reckless or callous indifference is whether it would be apparent to a reasonable supervisor that his conduct was "very likely to violate an individual's constitutional rights." Reid v. Brodeur, 2001 WL 274843 at *4 (D.N.H. 2001) quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir 1989). "In addition, there must be an 'affirmative link' between a subordinate's misconduct and the supervisory official's action or inaction." Reid, 2001 WL 274843 at *4 citing Febus-Rodriguez, 14 F.3d at 92. "Other factors that assist in determining liability are: (1) whether the supervisor had knowledge of the alleged violations; and (2) whether the supervisor's actions or inactions could be viewed as 'supervisory encouragement, condonation, or acquiescence.'" Reid, 2001 WL 274843 at *4 quoting Lipsett v. Blanco, 864 F.2d 881, 902 (1st Cir. 1988).

Here, Dyette has failed to set forth any facts or circumstances that would show that Superintendent Saba had any knowledge of the alleged assault at the time of its commission, or had any opportunity to stop or ameliorate the assault. Moreover, there are no facts to show his actions or inactions could be viewed as encouragement, condonation, or acquiescence with respect to Lt. Shagrue's actions.

Further, to the extent that Dyette challenges the denial of his grievances by Superintendent Saba, he has not demonstrated that he had a constitutionally protected interest in the grievance procedures such that § 1983 is implicated. See Piper v. Alford, 2003 WL 21350215, at *2 (N.D. Tex. 2003) (holding that a jail inmate "does not have a constitutional entitlement to an adequate grievance procedure" and the ineffectiveness or even absence of a grievance procedure does not give rise to a constitutional claim); see also Leavitt v. Allen, 46 F.3d 1114, 1995 WL 44530, at **2 (1st Cir. 1995) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988. "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his

grievance." <u>Flick</u> v. <u>Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>accord</u> <u>Adams</u> v. <u>Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted); <u>Sandin</u> v. <u>Conner</u>, 515 U.S. 472 (1995).[2]

In light of the above, Dyette's claims against Superintendent Saba are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

D.    <u>Claims Against D.O. DeMoura</u>

Similarly, Dyettte fails to set forth plausible claims against D.O. MeMoura. Indeed, apart from his identification in the caption of the Complaint, there is no mention of this defendant in the body of the Complaint.[3] Presumably, Dyette's claims relate to the disciplinary proceedings and outcome, but he has not set forth such claims and the Court will not infer such claims either from the Complaint or the attached exhibits. As pled, it would be unfair for this defendant to have to guess at or fashion the basis for his alleged liability in order to file a meaningful response.

E.    <u>The Motion to Appoint Counsel and Letter For Assistance Obtaining Counsel</u>

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). A civil plaintiff, however, does not have a constitutional right to free counsel. <u>DesRosiers</u> v. <u>Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional

---

[2]In an Exhibit (Docket No. 1-1 at 5), Dyette contends he was placed in 10 Block awaiting disciplinary action and he had requested an inmate grievance form. His requests were denied by staff. By the time he was able to get the form and submit his grievance, his grievance was considered untimely. Dyette appealed the grievance to Superintendent Saba, who considered it and found the allegations against staff were unfounded. <u>See</u> Exhibit (Docket No. 1-1 at 10).

[3]Although Dyette alleges due process violations for not being able to obtain the videotape of the assault, the Complaint fails to allege liability against any particular person(s). In an Exhibit (Docket No. 1-1 at 6), Dyette alleges he made a request for the videotape to defendant Investigator Black, who refused to provide it. In another exhibit, defendant D.O. DeMoura signed a letter to Dyette indicating that his request for evidence was denied as untimely, pursuant to 103 C.M.R. 430.11(6). <u>See</u> Exhibit (Docket No. 1-2 at 2). Dyette contends that he tried to hand the request to D.O. DeMoura who told him to mail it instead. He also advises that counsel for the Massachusetts Prisoner Legal Services has requested preservation of the videotape and other records. <u>See</u> Exhibit (Docket No. 1-3 at 2).

circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24.

Here, Dyette contends counsel should be appointed for him because his imprisonment will limit his ability to litigate, including research and investigation.  Further, a trial in this case would involve conflicting testimony and counsel would be better equipped to conduct cross examination and present evidence.  Finally, he has attempted to obtain a lawyer but has been unable to do so.

At this juncture, this Court cannot find that exceptional circumstances exist that would warrant appointment of *pro bono* counsel in this case, particularly where Dyette is proficient in the English language, his claims do not raise novel or complex issues of fact or law, his lack of funds and legal skills is not unique in prisoner litigation, and because several of his claims are subject to dismissal for the reasons set forth herein.  Moreover, based on a review of the attached exhibits indicating the defendants' position that the videotape does not show Lt. Shagrue punching Dyette and that the cause of the altercation was Dyette's refusal to comply with the directives regarding the pat search, the Court questions the merits and thus cannot find exceptional circumstances warrant appointment.

Accordingly, Dyette's Motion for Appointment of Counsel (Docket No. 2) is <u>DENIED</u> Should this case proceed to trial, the Court would consider whether appointment of counsel is warranted at that time.  Dyette's Letter (Docket No. 5) seeking assistance from the Pro Bono Coordinators is moot in view of the denial of appointment of counsel.

## III.    <u>Order to Show Cause or Amend Complaint</u>

In light of all of the above, the claims against  Superintendent Saba and D.O. DeMoura, will be dismissed within 42 days of the date of this Memorandum and Order unless Dyette

demonstrates good cause in writing why they should not be dismissed (by stating how his claims are plausible), or unless he files an Amended Complaint setting forth  plausible claims against these two defendants in accordance with Fed. R. Civ. P. 8 (expressly setting forth the separate cause(s) of action asserted against each defendant, and a concise statement of the factual basis supporting each cause of action).   Dyette's Amended Complaint should incorporate all of his claims insofar as the Amended Complaint will supersede the original.

Failure to comply with the directives contained in this Memorandum and Order may result in a dismissal of claims in this action.

No summonses shall issue pending further Order of the Court.  This Court will permit summonses to issue as to defendants Lt. Shagrue and Investigator Black once the issues with respect to the claims against Superintendent Saba and D.O. DeMoura are resolved.

## IV.   <u>Conclusion</u>

Based on the foregoing, it is hereby Ordered that:

1.     Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.     Within 42 days of the date of this Memorandum and Order, plaintiff shall demonstrate good cause in writing why his claims against Superintendent Saba and D.O. DeMoura should not be dismissed for the reasons stated herein, or he shall file an Amended Complaint in accordance with Rule 8 of the Federal Rules of Civil Procedure;

3.     No summonses shall issue pending further Order of the Court.  The Court will permit the claims against Lt. Shagrue and Investigator Black to proceed and will direct the issuance of summonses and service by the United States Marshal Service once the issues with respect to Superintendent Saba and D.O. DeMoura are resolved;

4.     Plaintiff's Motion for Appointment of Counsel (Docket No. 2) is <u>DENIED</u>.  His Letter (Docket No. 5) seeking assistance in obtaining counsel is moot in view of the denial of his motion.


SO ORDERED.


                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
Dated: March 23, 2016                   United States District Judge

9