United States District Court
District of Massachusetts

| |   |
|---|---|
| Shaka U. Dyette, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 16-10202-NMG |
| Scott Black, Kurt S. DeMoura, ) | |
| William Shugrue ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves the alleged mistreatment of Shaka Dyette ("plaintiff" or "Dyette") by three employees (collectively "defendants") of the Massachusetts Department of Correction while Dyette was incarcerated at MCI-Cedar Junction.

Dyette brings his action pursuant to 42 U.S.C. § 1983, alleging that 1) Lieutenant William J. Shugrue ("Shugrue") violated his Eighth Amendment rights when Shugrue accosted him, 2) Scott W. Black ("Black") violated his incorporated First Amendment rights when Black retaliated against Dyette for filing a grievance against Shugrue and 3) Kurt Demoura ("Demoura") violated his Fourteenth Amendment right to due process by obstructing Dyette's attempt to obtain evidence of the alleged battery.  In addition, Dyette alleges that Shugrue, Black and

-1-

Demoura engaged in a civil conspiracy to commit the underlying acts.

Pending before this Court is defendants' motion for summary judgment. For the following reasons, that motion will be allowed with respect to plaintiff's procedural due process claim but will otherwise be denied.

## I. Background

At all times relevant to this action, plaintiff was housed by the Massachusetts Department of Correction at MCI-Cedar Junction in Walpole, Massachusetts. On June 1, 2014, plaintiff was order by Corrections Office Hope Hill to comply with a "pat search" while he was leaving the dining area. During that process, Shugrue approached the plaintiff and the two exchanged words. Shugrue ordered plaintiff to enter a nearby room to be strip searched. Plaintiff contends that, as he was complying with that order, he was grabbed by Shugrue and other Corrections Officers and then punched by Shugrue in the face ("the incident").

As a result of that incident, plaintiff was placed in solitary confinement for 30 days and classified for placement in a maximum security prison. Plaintiff filed a grievance concerning the incident and the subsequent placement and classification. That grievance was assigned to Black, a Department of Correction investigator.

Plaintiff claims that Black attempted to coerce plaintiff to drop the grievance in return for a guarantee that he would not be classified for a maximum security prison. Dyette declined that offer. Black filed a disciplinary report against plaintiff that alleged that the initial grievance constituted providing false information against a staff member.

As a part of his investigation for the grievance, plaintiff requested a copy of the video tape of the incident. Plaintiff asserts that DeMoura refused to provide that video in bad faith and took actions to prevent plaintiff from obtaining the video.

## II. **Analysis**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**A. Count I - Excessive Force Claim**

Plaintiff contends that Shugrue violated the Eighth Amendment's prohibition of cruel and unusual punishment. Defendants respond that Shugrue's use of force was reasonable, and thus not in contravention of the Eighth Amendment.

The Eighth Amendment of the United States Constitution, incorporated through the Fourteenth Amendment, provides in part that "nor [shall] cruel and unusual punishments [be] inflicted." U.S. Const. amend. VIII. This prohibition includes the use of excessive and unjustified physical force by prison officials against inmates. See Whitley v. Albers, 475 U.S. 312, 327 (1986). In that context, the "unnecessary and wanton infliction

of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. at 319 (internal quotations omitted).

An excessive force claim will lie where the force was applied "maliciously and sadistically for the very purpose of causing harm." See Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (quoting Whitley, 475 U.S. at 320-21). In contrast, force applied "in a good-faith effort to maintain or restore discipline" does not constitute a violation. See id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Defendants assert that

> no reasonable inference could be drawn, based upon a review of [the] videotape, that defendants' use of force was unlawful.

The Court disagrees.

Viewing the evidence in the light most favorable to plaintiff, this Court believes that a reasonable jury could find that Shugrue did not act in a good-faith effort to maintain discipline but rather maliciously and sadistically to cause harm. See Whitley, 475 U.S. at 320-21. Conversely, a reasonable jury could also find that Shugrue acted to restore and maintain good order and discipline. Accordingly, a genuine issue of material fact exists and summary judgment is inappropriate for this claim.

Defendants' motion for summary judgment will, with respect to Count I, be denied.

**B. Count II - Retaliation Claim**

Dyette submits that Black retaliated against Dyette's exercise of his First Amendment rights by 1) suggesting that he could avoid a maximum security classification by withdrawing his grievance and 2) issuing a disciplinary ticket to Dyette for "lying" about the Lt. Shugrue incident. Defendants rejoin that Sgt. Black acted in good faith while reviewing the disciplinary record and that Dyette would have been classified to a maximum-security facility regardless of Sgt. Black's actions.

Prisoners have a First Amendment right to petition the prison for the redress of grievances and prison officials may not retaliate against prisoners for exercising that right. Brown v. Corsini, 657 F.Supp.2d 296, 305 (D. Mass. 2009). To establish a retaliation claim, the prisoner must demonstrate that: 1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive. Partelow v. Massachusetts, 442 F.Supp.2d 41, 51 (D. Mass. 2006).

Defendants contend that plaintiff cannot establish the "but for" prong because plaintiff was classified for maximum security before meeting with Black. Although defendants' are correct

-6-

with respect to the attempted "deal" Black offered, they are incorrect with respect to the disciplinary ticket that Black issued. Plaintiff alleges Black promised him a medium security classification if he would withdraw the grievance, that plaintiff declined that "offer" and that, frustrated with that result, Black issued a trumped-up disciplinary ticket. Because a reasonable jury could find that the ticket would not have been issued "but for" Black's retaliatory motive, defendants' motion for summary judgment will, with respect to Count II, be denied.

**C. Count III - Due Process Claim**

Dyette asserts that DeMoura violated his right to due process by intentionally obstructing him from obtaining video of the incident. Defendants contend that plaintiff's claim fails as a matter of law because he was not deprived of a protected liberty interest.

The Fourteenth Amendment provides that

> nor shall any state deprive any person of life, liberty, or property, without due process of law.

U.S. Const. amend. XIV, § 1.

To determine whether due process has been violated, the Court considers whether: 1) the plaintiff has been deprived of a protected interest and 2) if so, whether that deprivation was accomplished without due process of law. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). A protected

liberty interest may arise from the Due Process Clause itself or from state law. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). A liberty interest is defined as a change that creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff proffers two purported liberty interests: his right to be free from incarceration in solitary confinement and his right to be free from incarceration in a maximum security prison. Those interests do not, however, constitute liberty interests as a matter of law. See Sandin, 515 U.S. at 484 (30 days in solitary confinement does not constitute a liberty interest); Dominique v. Weld, 73 F.3d 1156, 1160-61 (1st Cir. 1996) (transfer to more secure prison does not constitute liberty interest).

Accordingly, defendants' motion for summary judgment will, with respect to Count III, be allowed.

**D. Count IV - Civil Conspiracy**

Plaintiff contends that defendants agreed to, and then did, act in unison to commit the acts underlying counts I, II and III. To succeed on a claim of conspiracy under Section 1983, a plaintiff must prove both a conspiratorial agreement and an actual deprivation of rights. Nieves v. McSweeney, 241 F.3d 46,

53 (1st Cir.2001). Accordingly, no conspiracy claim arising out of Count III will lie.

As to Counts I and II, however, offers evidence, albeit disputed, that DeMoura delivered the disciplinary ticket to plaintiff while he was in solitary confinement and Black attempted to coerce Dyette into withdrawing the grievance against Shugrue from which a reasonable jury could infer that an agreement existed between the defendants. Accordingly, a genuine issue of material fact exists as to whether defendants DeMoura, Black and Shugrue entered a conspiratorial agreement to deprive plaintiff of his Eighth and First Amendment rights.

While plaintiff's chances of proof of such a conspiracy may be tenuous, he has done enough to avoid summary judgment against him.

Defendants' motion for summary judgment will, with respect to Count IV, be denied.

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 56) is, with respect to Count III, **ALLOWED,** but is otherwise **DENIED.**

**So ordered.**

                                          /s/ Nathaniel M. Gorton  
                                          Nathaniel M. Gorton  
                                          United States District Judge

Dated January 23, 2018